IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| HAROLD EDWARD SWANK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 313-085 |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Harold Edward Swank appeals the decision of the Acting Commissioner of Social Security denying his application for Supplement Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

### I. BACKGROUND

Plaintiff applied for SSI on January 5, 2007, alleging a disability onset date of September 24, 2006. Tr. ("R"), pp. 25, 290. The Social Security Administration denied the application initially and on reconsideration. R. at 130-33, 137-39. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. at 141, which was held on July 28, 2009. R. at 117. Id. On September 2, 2009, the ALJ issued an unfavorable decision. R. at 120-25. Plaintiff

requested review of the ALJ's decision, which the Appeals Council granted on December 8, 2010 and remanded for a new decision. R. at 128-29. During the second hearing on May 30, 2012, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from Dr. Ron Spitznagel, a Vocational Expert ("VE"). R. at 49-84. On June 22, 2012, the ALJ issued a second unfavorable decision.

Applying the five-step sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since January 5, 2007, the application date (20 C.F.R. §§ 416.1571 *et seq*.).

2. The claimant has the following severe impairments: depression and testicular hernia (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(b)[1] except he is an individual whose left scrotal hernia limits him to performing medium exertional work activities. He can individually sit, stand, walk, push and/or pull for at least six of eight hours each eight-hour workday. He can lift/carry 50 pounds occasionally (up to 1/3 of an eight-hour workday) and 25 pounds frequently (up to 2/3 of an eight-hour workday). His depression limits him to performing work activities with a specific vocational preparation of 1-3. While his concentration may drift for up to 1/3 of an eight-hour workday if the work is repetitive, routine, or boring; he can pay enough attention to details to meet the general productivity requirements of the job(s) within the same workday. Even though his pace might be disrupted once or twice a week, he will still be able to perform assigned tasks by the end of the same workday. His social interaction with the public and coworkers should be

---

[1]"Medium work" is defined as work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, he or she can also do sedentary and light work. 20 C.F.R. § 416.967(c)

2

> limited to no more than 1/3 of an eight-hour workday although he can work in close proximity with them throughout the entire workday. He is better off working with objects rather than people. He should avoid constantly changing or fluid work environments. (20 C.F.R. § 416.965).
>
> 5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR §§ 416.969 and 416.969(a)).

R. 25-34.

When the Appeals Council denied Plaintiff's request for review on September 20, 2013, R. 5-7, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ improperly discounted the opinion of the treating physician as being based on subjective complaints and (2) the ALJ accorded too much weight to the consulting experts. (See generally doc. no. 14 ("Pl.'s Br.").) The Commissioner maintains that the decision to deny Plaintiff's application is supported by substantial evidence and should therefore be affirmed. (See doc. no. 17 ("Comm'r's Br.").)

## II.   STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 401 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145.

3

Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

### A. Weight of Opinion by Treating Physicians and Consulting Physicians.

In the Eleventh Circuit, a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1159 (11th Cir. 2004) (ruling that the ALJ must accord substantial or considerable weight to the opinion of a treating physician unless "good cause" to the contrary is shown); Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir. 1985) (same).

The Commissioner, however, is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical record. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); see also Phillips v. Barnhart, 357 F.3d 1232, 1241 (11th Cir. 2004) (affirming ALJ's rejection of treating physician's opinion when such opinion conflicted with the doctor's treatment notes and claimant's testimony regarding her daily activities).

Although a treating physician's opinion must generally be given substantial weight, the same is not true of a consultative physician. As a general rule, the opinion of a one-time examiner

is not entitled to great weight and may be discredited by other evidence in the record. Crawford, 363 F.3d at 1160-61.  In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. See 20 C.F.R. § 404.1527(c)(1)-(2), (5).

### B. The ALJ Established Good Cause for Giving No Weight to Treating Physician Dr. Lucero's Opinions Regarding Limitations in Plaintiff's Ability to Work with Others, Set Goals, and Follow Instructions.

Plaintiff argues that the ALJ committed error when he gave no weight to the opinions of Dr. Manuel Lucero, a treating physician, who opined in multiple medical source statements as to limitations in Plaintiff's ability to work with others and follow instructions.  In the first such statement, dated October 22, 2009, Dr. Lucero found that Plaintiff has side effects of drowsiness from his medications and that he is mentally ill and unable to work. R. at 603-04.  On April 19, 2010, Dr. Lucero opined that Plaintiff has moderate limitations in most areas, a marked limitation in the ability to set realistic goals and make independent plans, and a substantial loss in the ability to respond appropriately to supervision, co-workers, and usual work situations.  R. at 630-32.  Nearly two years later on May 5, 2012, Dr. Lucero assigned moderate limitations to all categories of mental functioning, a substantial loss in the ability to respond appropriately to supervision, co-workers, and usual work situations, and a substantial loss in the ability to understand, remember, and carry out simple instructions.  R. at 667-70.  In sum, Dr. Lucero repeatedly found during the period of October 2009 through May 2012 that Plaintiff was unable to work because mental illness substantially robbed him of the ability to set realistic goals, make

6

independent plans, respond appropriately to colleagues or usual work situations, or even follow simple instructions.

The ALJ gave no weight to these opinions from Dr. Lucero's medical source statements because of material inconsistencies with Dr. Lucero's own treatment notes from the same period of time. R. at 30-32. A close review of the record confirms that, just as the ALJ surmised, Dr. Lucero's treatment notes paint a completely different picture of Plaintiff than the individual Dr. Lucero describes in his medical source statements. Indeed, Dr. Lucero's treatment notes confirm that Plaintiff achieved a normal rating on mental status examinations administered in April 2008 and December 2011. R. at 571, 760. Those same notes show that he achieved a GAF score of 51 during the same December 2011 visit, which indicates moderate symptoms bordering on serious. R. at 571.

A closer look at Dr. Lucero's findings from the December 2011 mental status examination reveals even more disturbing inconsistencies. Dr. Lucero expressly found that Plaintiff was clear, coherent, not delusional, of average intelligence, and had an intact memory with immediate recall of remote events. R. at 760. Plaintiff could also interpret proverbs, calculate numbers, give directions from Georgia to Florida, and name the President. R. at 760. Furthermore, Dr. Lucero noted that the "[t]est for cognition did not show any cognitive impairment and he is not confused and he can follow instructions and … is in good contact with reality. His judgment is not impaired." R. at 760. These remarkable findings fly in the face of Dr. Lucero's repeated assertions, made before and after the December 2011 examination, that Plaintiff was unable to work because mental illness substantially robbed him of the ability to set realistic goals, make independent plans, or even follow simple instructions. R. at 603-04, 630-

32, 667-70. Similarly inconsistent is Dr. Lucero's finding in December 2011 of no impairments in judgment when compared with his finding in May 2012, just six months later, that Plaintiff had a substantial loss in the ability to make work related decisions. R. at 669. Nothing in the record suggests that Plaintiff's judgment deteriorated during the period between these two appointments.

There are additional inconsistencies that cast further doubt on the opinions in Dr. Lucero's medical source statements, as highlighted by the ALJ. There is no benefit to repeating all of these myriad inconsistencies here because a few examples suffice. First, Dr. Lucero remarked in his October 2009 medical source statement that Plaintiff suffers from drowsiness as a side effect of his medications. R. at 603. Office notes from August 2009 through September 2010 affirmatively state that he has no such side effects. R. at 599, 624, 665. Indeed, in August 2009 Plaintiff told Dr. Lucero that he was doing very well and felt "wonderful at this time, without any side effects." R. at 31, 599.

Second, and just as troubling, are Dr. Lucero's repeated assertions from April 2010 to May 2012 that mental illness markedly limited Plaintiff's ability to interact appropriately with colleagues at work. The treatment notes spanning his multiple appointments, however, paint a completely different picture of an alert, cooperative, communicative, and friendly patient. R. at 571-99, 665-66, 756-70. Also, Plaintiff's own testimony does not suggest that Plaintiff was a hermit who was incapable of socializing, but instead confirms that he had recently lived with his mother, niece, and his niece's boyfriend in Ohio for a period of eighteen months. R. at 56.

Given the numerous and material inconsistencies between Dr. Lucero's treatment notes and medical source statements, the Court finds that the Commissioner satisfied his burden of

showing good cause for giving no weight to Dr. Lucero's opinions. Plaintiff also argues that the ALJ erred by rejecting Dr. Lucero's opinions as predicated on subjective complaints by Plaintiff that he found to not be credible. This is incorrect. As detailed above, the ALJ rejected Dr. Lucero's opinions based on the multiple inconsistencies in his own treatment notes. R. at 32. Notably, however, the ALJ did note shocking inconsistencies in several statements of Plaintiff, such as a statement by Plaintiff in a 2000 application for benefits that he was able to read and write that contradicted his assertion in a 2009 application that he was illiterate. R. at 33.

### 1. The ALJ Established Good Cause for According Significant Weight to the Opinions of Consultative Examiner Dr. James Tanley.

Plaintiff argues the ALJ erred by according significant weight to the findings of consultative examiner and clinical psychologist Dr. James C. Tanley, who (1) diagnosed Plaintiff with depressive disorder NOS based on Plaintiff's reports of anhedonia and diminished energy; (2) assigned a GAF of 70, indicating only mild symptoms; (3) concluded that Plaintiff had no impairments in ability to relate with others, understand and follow simple instructions, maintain attention and perform simple tasks; and (4) found that Plaintiff was only mildly impaired in his ability to deal with workplace stress and pressure. R. at 32, 518-21.

For good cause, an ALJ can credit the opinions of non-treating physicians over those of a treating physician. See Forrester v. Comm'r of Soc. Sec., 455 F. App'x 899, 902 (11th Cir. 2012). The ALJ established good cause here based on (1) the material inconsistencies between Dr. Lucero's opinions in his medical source statements and the facts recorded in his treatment notes; and (2) the ALJ's correct finding that Dr. Tanley's examination was more consistent than Dr. Lucero's opinions with respect to the individual described in Dr. Lucero's treatment notes. R. at 32-33.

Plaintiff argues that Dr. Tanley's opinion should not have been credited because his examination occurred in April 2007, prior to Dr. Lucero's medical source statements from October 2009 through May 2012. However, the ALJ understood the timing of these events and expressed a rational basis for finding that Dr. Tanley's examination more accurately reflected Plaintiff's abilities and limitations. In addition, there was no material change in Plaintiff's condition during this period, and the consistency between Dr. Tanley's findings and Dr. Lucero's treatment notes demonstrates that Dr. Tanley's findings remained reliable through this period. For all of these reasons, the ALJ established good cause for crediting the opinions of Dr. Tanley over the opinions of Dr. Lucero.

### 2. The ALJ Assigned Appropriate Weight to the Residual Functional Capacity Findings by State Medical Consultants, Drs. Linda O'Neil and Allen Carter.

The ALJ noted that the findings of two stated consultants employed by State Disability Determination Services, Linda O'Neil, Ph.D. and Allen Carter, Ph.D., also supported a finding of not disabled, and he gave those findings some weight. R. at 33. Plaintiff objects to the weight accorded to the state consultants. Pl.'s Br. at 13-14. As the ALJ explained, the findings of state agency medical consultants are not accorded the same controlling weight or deference as the opinions of treating physicians. However, an ALJ may nevertheless give such findings more weight than that of treating physicians if supported by substantial evidence. See SSR 96-6p, 1996 WL 374180; Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 874 (11th Cir. 2011) (concluding ALJ properly gave more weight to non-examining consultants' opinions over a treating physician's opinion where the treating physician's opinion was discredited). As

explained in detail below, the ALJ properly gave some weight to the findings of Drs. O'Neil and Carter and cited substantial evidence supporting their findings.

On January 18, 2010, Dr. O'Neil opined that Plaintiff had moderate restrictions of daily living, and moderate difficulties in maintaining social functioning, concentration, persistence and pace. R. at 605, 615. She opined that Plaintiff generally could perform simple, non-production tasks, and had limited ability to deal with crowds and stress but could handle basic interactions in a fairly low-demand setting. R. at 621. Dr. O'Neil indicated that Plaintiff was stable and fared better when on medications. R at 621.

On September 10, 2010, Dr. Carter, Ph.D., opined that Plaintiff had mild restrictions of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace, and no episodes of decompensation. R. at 645, 655. Dr. Carter opined that Plaintiff had difficulty with complex instructions but could understand and carry out simple instructions, and that he had a reduced ability to interact with large groups and co-workers but could interact with supervisors. R. at 641, 643. Plaintiff also had a reduced ability to adapt to changes in work settings. R. at 643. Dr. Carter indicated that none of the opined limitations were substantial. R. at 643.

The findings and opinions by the state medical consultants are entirely consistent with Dr. Tanley's findings and Dr. Lucero's treatment notes and only differ with Dr. Lucero's medical source statements, which were properly discredited by the ALJ. Their findings that Plaintiff was only mildly or moderately limited in all areas are consistent with Dr. Lucero's treatment notes remarking that Plaintiff was a generally amiable, clear and coherent patient who could follow simple instructions as extensively discussed above. The only contradiction to the

opinions by the state medical consultants comes from Dr. Lucero's discredited medical source statements which do not provide a basis for disregarding the opinions or giving them less weight. See Jarrett, 422 F. App'x at 874 (noting that the state consultants' opinions were consistent with all of the medical evidence except for a discredited questionnaire by a treating physician). Accordingly, these findings by the state agency medical consultants provide additional evidence to support the ALJ's findings. See Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).

Although Plaintiff may disagree with the manner in which the ALJ weighed the evidence of record, the ALJ as the fact-finder has the duty to weigh the evidence of record. "The ALJ's task is to examine the evidence and resolve conflicting reports." Wolfe v. Chater, 86 F.3d 1072, 1079 (11th Cir. 1996) (citing Powers v. Heckler, 738 F.2d 1151, 1152 (11th Cir. 1984)) (ALJ's examination of conflicting VE testimony); see Richardson, 402 U.S. at 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). Here, the ALJ's decision shows that he properly reviewed, considered and weighed the opinion evidence in this case. Plaintiff makes a cursory argument that the DDS psychologists require all of the treatment notes and medical source opinions to render a valid opinion. Pl.'s Br. at 14. Plaintiff cites no authority for this broad statement, and the regulations and case law only require that the opinions be supported by substantial evidence. See SSR 96-6p, 1996 WL 374180; Jarrett, 2011 WL 1378108, at *3-5 The ALJ stated good cause and substantial evidence supports the weight he assigned to the opinions of Drs. Carter and O'Neil.

## IV. CONCLUSION

In sum, the ALJ properly assigned Dr. Lucero's opinions no evidentiary weight after considering all the evidence of record and finding the opinions unsupported by Dr. Lucero's own treatment notes and contrary to substantial evidence in Plaintiff's medical records. Lewis, 125 F.3d 1440. The ALJ also accorded proper weight to Dr. Tanley's evaluation and the state consultants' opinions after properly discrediting Dr. Lucero's medical source statements. See Forrester v. Comm'r of Soc. Sec., 455 F. App'x 899, 902 (11th Cir. 2012).

Accordingly, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 22nd day of January, 2015, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA